```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
DAVID BAKALAR,                   :
                                         05 Civ. 3037 (WHP)
            Plaintiff,           :

      -against-                  :       MEMORANDUM AND ORDER

MILOS VAVRA and LEON FISCHER,    :

            Defendants.          :
---------------------------------X
LEON FISCHER and MILOS VAVRA, as :
Co-heirs of the Estate of Fritz Grunbaum,
                                 :
            Counterclaim-Plaintiffs,
                                 :
      -against-
                                 :
DAVID BAKALAR, THE MUSEUM OF
MODERN ART, NEUE GALERIE,        :
OBERLIN COLLEGE, SOTHEBY'S, INC.
and SCHENKER, INC., individually and :
on behalf of those similarly situated,
                                 :
            Counterclaim-Defendants.
---------------------------------X
```

WILLIAM H. PAULEY III, District Judge:

        Defendants and Counterclaim-Plaintiffs Milos Vavra ("Vavra") and Leon Fischer ("Fischer") (together, the "Heirs") move pursuant to Rule 23 of the Federal Rules of Civil Procedure to certify a defendant class comprised of six subclasses. The subclasses consist of private individuals, museums, art dealers and others involved with artworks that were part of the estate of Fritz Grunbaum ("Grunbaum"). The Heirs seek to name the following Counterclaim-Defendants as class representatives: David Bakalar ("Bakalar"), The Museum of Modern Art ("MoMA"), Neue Galerie, Oberlin College ("Oberlin"), Sotheby's, Inc. ("Sotheby's") and

Schenker, Inc. ("Schenker") (collectively, the "Counterclaim-Defendants"). For the following reasons, the Heirs' motion for class certification is denied.

BACKGROUND

On March 21, 2005, David Bakalar commenced this action seeking a declaratory judgment that he is the rightful owner of a drawing by Austrian expressionist artist Egon Schiele ("Schiele") known as Seated Woman with Bent Left Leg (Torso) (the "Drawing"). (Complaint, dated Mar. 21, 2005 ("Complaint" or "Compl.") ¶ 4.) It is estimated that prior to his death in 1918, Schiele created over 2,700 drawings. (Declaration of Jane Kallir, dated Jan. 27, 2006 ("Kallir Decl.") at ¶ 2; Transcript of Oral Argument on Apr. 27, 2006 ("Tr.") at 7.)

Bakalar is a prominent Massachusetts businessman and philanthropist. (Compl. ¶ 4.) In 1964, he purchased the Drawing from a New York art dealer for a nominal sum. (Declaration of William L. Charron in Support of Bakalar's Opposition to Motion for Class Certification, dated Mar. 10, 2006 ("Charron Decl.") ¶ 14.) He kept the Drawing until 2004, when he consigned it to Sotheby's for sale. (Charron Decl. ¶ 15.) In February 2005, Sotheby's auctioned the Drawing in London for approximately $726,000. (Charron Decl. ¶ 15.) The sale was never consummated because the Heirs asserted a claim to the Drawing. (Compl. ¶ 10.) Through their attorney, the Heirs informed Sotheby's that the Nazis expropriated the Drawing from Grunbaum in 1938, and that as his legal heirs they are the proper titleholders. (Compl. ¶ 10.)

In 2002, an Austrian court declared Vavra and Fischer to be the legal heirs of Grunbaum's estate. (First Amended Counterclaims and Answer, dated Feb. 6, 2006 ("Answer") ¶¶ 243, 247.) Grunbaum was a well-known cabaret performer who resided with his wife

Elisabeth in Vienna prior to World War II. (Compl. ¶ 22.) Grunbaum and his wife were Jewish. (Answer ¶ 252.) They owned an extensive art collection, including many works by Schiele. (Compl. ¶ 22.) On April 1, 1938, the Nazis arrested Fritz Grunbaum and placed him in the Dachau concentration camp, where he died in 1941. (Answer ¶ 91; Declaration of Herbert Gruber in Support of Class Certification, dated Jan. 5, 2006 ("Gruber Decl.") at ¶ 29.) Thereafter, on July 20, 1938, the Nazis evicted Elisabeth Grunbaum from the apartment. She was arrested and died in the Maly Trostinec concentration camp in 1942. (Answer ¶ 245; Gruber Decl. ¶ 29.)

Following Elisabeth Grunbaum's eviction, Dr. Franz Kieslinger, an alleged agent of the Nazis, inventoried the Grunbaum art collection in the Vienna apartment. (Answer ¶¶ 103, 249 & Ex. B: Inventory of Grunbaum Art Collection by Dr. Kieslinger ("Kieslinger Inventory"); Gruber Decl. ¶ 29.) The Kieslinger Inventory reflects over 450 individual works, including 81 by Schiele, which are described as follows:[1]

```
     1.    E. Schiele  The Self Seers, oil on canvas
     2.       "        Portrait of a Woman, oil on canvas
     3.       "        Town by a River (Dead City)
     4.       "        Small Landscape with Trees
     5.       "        Ships in the Harbor
                              ***
    37.    Large drawings by Schiele, 55 works colored
            a. 20 drawings and 1 print from Schiele
```

(Answer Ex. B.) Only five of the 81 Schieles included in the Inventory are identified by title. (Answer Ex. B.)

Following Kieslinger's inventory, approximately 420 Grunbaum works were deposited with a storage company, Schenker & Co. A.G. ("Schenker & Co."). (Answer ¶ 257 &

---

[1] Because the Kieslinger Inventory is in German, this Court relies on the English translation. (Answer Ex. B.)

3

Ex. C: Schenker & Co. Request for Export Permit, dated Sept. 8, 1938). An invoice prepared by Schenker & Co. (the "Schenker Invoice") describes this artwork in broad categories such as "10 Drawings" and "278 Drawings, some in color." (Answer Ex. C.) The Heirs contend that in 1931, the German Railways, a Nazi enterprise, acquired Schenker & Co. and, thus, Schenker & Co. "was acting as an instrumentality of the Nazis and . . . expropriating [Grunbaum] property." (Answer ¶¶ 112-13, 260.)

What happened to the Grunbaum art collection between 1938 and 1952 is a mystery. (Compl. ¶ 25.) Beginning in 1952, many works resurfaced in Switzerland. (Compl. ¶ 29.) Eberhard Kornfeld ("Kornfeld"), a gallery owner in Bern, Switzerland, maintains that between 1952 and 1955, Mathilde Lukacs ("Lukacs"), the sister of Elisabeth Grunbaum, delivered many works to him for auction or private sale. (Charron Decl. ¶ 16 & Ex. 8: Collection of Kornfeld Correspondence.) At least 45 of these pieces were Schiele works. (Charron Decl. Ex. 8(g): Lists of Schiele Work Purchased from Lukacs.) Kornfeld contends that in 1998 he learned that the Lukacs artwork came from the Grunbaum collection when the Reif family approached him as purported Grunbaum heirs.[2] (Charron Decl. Ex. 8(f): Letter from Kornfeld to Gruber, dated Feb. 7, 2006.)

Vavra and Fischer dispute Kornfeld's account. (Answer ¶¶ 272-75.) Herbert Gruber ("Gruber"), the Heirs' genealogical consultant, attests that "[o]ver time, Kornfeld has told many inconsistent stories to the press and in correspondence about what Matilde [sic] Lukacs told him about the provenance of the works that she allegedly sold to him." (Gruber Decl. ¶ 35.) On February 7, 2006, Kornfeld responded to these assertions by challenging

---

[2] In 1963, a German court provided the Reif family with a certificate of inheritance, which was later revoked on March 19, 1998. (Charron Decl. Ex. 8(e): Opinion of Galerie Kornfeld; Answer ¶ 221.)

4

Gruber's declaration as untruthful and noting that Gruber never contacted him. (Charron Decl. Ex. 8(f).)

When the Heirs answered the Complaint, they interposed two counterclaims against Bakalar and a putative class of defendants concerning the ownership of the Grunbaum art collection. (Verified Answer and Counterclaims, dated June 1, 2005 ¶¶ 230-46.) Following discovery on the proposed defendant class, the Heirs advanced seven counterclaims against Bakalar, MoMA, Neue Galerie, Oberlin, Sotheby's and Schenker individually and on behalf of a putative class of similarly situated defendants. The proposed defendant class consists of:

> [A]ll persons having taken possession of, asserting ownership in, actually possessing, or who have derived revenues or commissions from the sale of artworks originating from the estate of Fritz Grunbaum from September 8, 1928 to the present.

(Answer ¶ 193.) Vavra and Fischer seek to divide this class into six subclasses, each represented by one of the named Counterclaim-Defendants:

> A. By Bakalar: all private individuals currently in possession of and claiming ownership to artworks originating from the estate of Fritz Grunbaum;
>
> B. By MoMA: all museums in New York County currently in possession of and claiming ownership to artworks originating from the estate of Fritz Grunbaum;
>
> C. By Oberlin College: all museums outside of New York County currently in possession of and claiming ownership to artworks originating from the estate of Fritz Grunbaum;
>
> D. By Neue Galerie: all museums currently in possession of artworks originating from the estate of Fritz Grunbaum on loan from other collectors or institutions and to which such museums do not claim ownership of these artworks;
>
> E. By Sotheby's: all art dealers having transacted in artworks originating from the estate of Fritz Grunbaum from September 8, 1938 until the present; and

5

> F. By Schenker: all persons or entities acting as instrumentalities of the Nazi regime having participated directly or indirectly in the murder and expropriation of Fritz Grunbaum from September 8, 1938 to the present, along with their successors and assigns.

(Answer ¶¶ 194, 281-328.) The Heirs submit that their proposed class satisfies the prerequisites of Rule 23(a) and is maintainable under any of Rule 23(b)(1), (b)(2) or (b)(3). The Counterclaim-Defendants oppose class certification on the grounds that the Heirs cannot satisfy the requirements of Rule 23 and that any such certification would be inconsistent with due process.

## DISCUSSION

I. <u>Class Certification Standard</u>

Rule 23 governs the certification of plaintiff and defendant classes. <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995); <u>Monaco v. Stone</u>, 187 F.R.D. 50, 64 (E.D.N.Y. 1999). To certify a class under Rule 23, the Heirs bear the burden of satisfying the four prerequisites of 23(a) and one of the three categories of 23(b) with respect to the proposed class and each subclass. <u>Heerwagen v. Clear Channel Commc'ns</u>, 435 F.3d 219, 225 (2d Cir. 2006). A rigorous analysis must be conducted to determine whether Rule 23 has been satisfied. <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982). Courts should not delve into the merits of the underlying claims on class certification because the question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177-78 (1974) (citation omitted). "[I]n making a certification decision, a judge must look somewhere between the pleading and the

6

fruits of discovery . . . . Enough must be laid bare to let the judge survey the factual scene on a kind of sketchy relief map, leaving for later view the myriad of details that cover the terrain." Sirota v. Solitron Devices, Inc., 673 F.2d 566, 571-72 (2d Cir. 1982) (citation omitted); accord Heerwagen, 435 F.3d at 231.

In the class action context, due process insures procedural fairness and protects the interests of absent class members. See Hansberry v. Lee, 311 U.S. 32, 42 (1940); 2 Newberg on Class Actions § 4:47 (4th ed. 2002). These concerns are particularly acute in defendant class actions where the unnamed class members risk exposure to liability. See Integra-a-Hotel & Rest. Co. v. Fid. Capital Appreciation Fund, 262 F.3d 1089, 1105 (10th Cir. 2001) ("[D]efendant class actions create a special need to be attentive to the due process rights of absent parties."); Moffat v. UniCare Midwest Plan Group 31451, No. 04 Civ. 5685, 2006 WL 897918, *7 (N.D. Ill. Apr. 5, 2006) (due process protections particularly important for defendant class); Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Ill., Inc., 97 F.R.D. 668, 674 (N.D. Ill. 1983) ("Where representative adjudication occurs pursuant to a defendants class, due process concerns not inherent in plaintiff class actions arise."); Marchwinski v. Oliver Tyrone Corp., 81 F.R.D. 487, 489 (W.D. Pa. 1979) ("[A] defendant class differs in vital respects from a plaintiff class, and . . . raises immediate due process concerns. . . . [W]hen one is an unnamed member of a defendant class, one may be required to pay a judgment without having had the opportunity to personally defend the suit.").

Accordingly, "[t]here is little doubt that a defendant class requires closer scrutiny of Rule 23 tests to assure fairness to absent members based on long-standing due process protections." Newberg § 4:48; see also The Flying Tiger Line, Inc. v. Cent. States, SW & SE Areas Pension Fund, No. 86-304 (CMW), 1986 WL 13366, at *4 (D. Del. Nov. 20, 1986)

("Defendant class actions, while appropriate, require special care before certification."). As a result, defendant class actions are seldom certified. See Thillens, 97 F.R.D. at 674; In re Gap Stores Sec. Litig., 79 F.R.D. 283, 292 (N.D. Cal. 1978); see generally Consol. Rail Corp., 47 F.3d at 483 (observing that plaintiff classes are certified more frequently than defendant classes); Marchwinski, 81 F.R.D. at 489 ("A defendant class is an unusual, although not entirely novel concept.").

II.     Rule 23(a) Prerequisites

Under Rule 23(a), the Heirs must establish: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the defenses of the representative parties are typical of the defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In considering whether to certify a defendant class, commonality, typicality and adequacy of representation merge together. Monaco, 187 F.R.D. at 66; DeAllaume v. Perales, 110 F.R.D. 299, 305 (S.D.N.Y. 1986).

In addition to the enumerated factors above, "Rule 23 contains an implicit requirement that the proposed class be precise, objective and presently ascertainable. Thus, a proposed class must be clearly defined so that it is administratively feasible for a court to determine whether a particular individual is a member." Burley v. City of New York, No. 03 Civ. 735, 2005 WL 668789, at *8 (S.D.N.Y. Mar. 23, 2005) (citations omitted); see also McBean v. City of New York, 228 F.R.D. 487, 492 (S.D.N.Y. 2005); Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003); Rios v. Marshall, 100 F.R.D. 395, 403 (S.D.N.Y. 1983).

A.  Ascertainability

Whether a proposed class is ascertainable is fundamental to certification. See McBean, 228 F.R.D. at 492; Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476, 481 (S.D.N.Y. 2005). Class membership must be readily identifiable such that a court can determine who is in the class and bound by its ruling without engaging in numerous fact-intensive inquiries. Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911 (HB), 2003 WL 21659373, at *2 (S.D.N.Y. July 15, 2003); Daniels v. City of New York, 198 F.R.D. 409, 414 (S.D.N.Y. 2001). While class members need not be ascertained prior to certification, they must be ascertainable at some stage of the proceeding. Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 338 (S.D.N.Y. 2004); Fears, 2003 WL 21659373, at *2.

The Heirs' class action pleading seeks certification of a defendant class that participated in transactions in any artworks originating with the Grunbaum collection as enumerated in the Kieslinger Inventory. (Answer ¶¶ 193, 202.) However, the class certification motion papers define the universe of Grunbaum artworks more narrowly, concentrating on 124 Schiele pieces, which the Heirs contend were part of the Grunbaum collection. (Compare Answer ¶ 202, with Memorandum of Law in Support of Motion for Class Certification, dated Feb. 6, 2006 ("Heirs' Mem.") at 2-3, 8, and Gruber Decl. passim.) This matter was clarified at argument when counsel for the Heirs represented that class membership is based on all the artwork included in the Kieslinger Inventory, not just the Schieles. (Tr. at 8.) Based on that Inventory, the Grunbaum art collection consisted of more than 450 works, including 81 pieces by Schiele. (Answer Ex. B.)

The Heirs cannot demonstrate that their proposed class and subclasses are ascertainable. With respect to the more than 350 unidentified works reflected in the Kieslinger

9

Inventory by artists other than Schiele, the Heirs fail to establish that the putative defendant class members who own, possess or participated in transfers of these works are readily identifiable. Most of this artwork is not described by title, making it extremely difficult to identify. The Heirs attempt to overcome the elusive nature of this challenge by describing their genealogist's efforts to research the Grunbaum collection since April 1998. (Gruber Decl. ¶ 9.) But that effort misses the mark. While Gruber claims that he reviewed thousands of documents and searched Austrian libraries, he has not identified a single untitled non-Schiele work in the Kieslinger Inventory. (Gruber Decl. ¶¶ 16, 18-19.)

Gruber purports to trace 19 non-Schiele works through Kornfeld to the Grunbaum collection, but none of these works have been cross-referenced to the Kieslinger Inventory. (Gruber Decl. ¶ 36 at 20-21.) Thus, this Court cannot conclude that any of those 19 works were included in the Kieslinger Inventory for purposes of class certification. Even if they were, the Heirs have not attempted to identify the remaining approximately 330 untitled works. At argument, the Heirs acknowledged the futility of the challenge: "[w]e're not claiming that your Honor will ever be able to give individualized determinations against 450 artworks. We don't think your Honor has the power and we don't think we will ever have the evidence." (Tr. at 17.) Because the Heirs cannot identify the artwork, they cannot ascertain the owners, possessors or individuals who participated in transfers of such works. See Rios, 100 F.R.D. at 403 (class is not ascertainable where identifying members is a "Sisyphean task"); Adashunas v. Negley, 626 F.2d 600, 603-04 (7th Cir. 1980) (where identification of class members is a "gargantuan task," class is not ascertainable).

Similarly, despite Gruber's substantial discussion of his Schiele research, the Heirs cannot adequately explain how they intend to identify the 76 Schiele works broadly

described as "drawings" and a "print" in item 37 of the Kieslinger Inventory. (Answer Ex. B.) Because Schiele created more than 2,700 drawings, there is at most a 2.8 percent chance that any one of those works was one of the 76 Schieles that Kieslinger inventoried in the Grunbaum apartment in July 1938. (Kallir Decl. ¶ 2.) Thus, the likelihood of identifying any of these Schieles is remote. The Heirs' optimism that they will unearth evidence concerning Grunbaum's ownership of Schiele works does not countervail that stark reality. (Tr. at 25-26.) The Heirs rely on correspondence between Grunbaum and Otto Kallir concerning artwork loaned to Kallir in the 1920s. (Gruber Decl. ¶ 25.) They also point to 1923 exhibition catalogs, but have been unable to obtain them. (Gruber Decl. ¶¶ 19, 23; Tr. at 25 ("We believe there's [sic] additional documents out there. We just have to find them.")

This Court declines the Heirs' invitation to embark on an odyssey that would require innumerable fact intensive inquiries to ascertain class membership. Even if the Heirs could identify all the Schiele works owned by Grunbaum at any time, that alone would not establish that those same Schiele pieces were in the apartment in July 1938 and inventoried by Kieslinger. Moreover, the Heirs contend that they have identified 124 Schiele works which may have originated from the Grunbaum collection. (Gruber Decl. ¶¶ 35-45 at 21-33.) To support that contention, the Heirs rely in part on Kornfeld's records while simultaneously asserting that those records are a fabrication. (Gruber Decl. ¶¶ 35-36 at 15-16, 35 at 21.) Putting aside the inherent contradiction, evidence suggests that Kornfeld bought at least 45 Schiele works from Lukacs after World War II.[3] (Charron Decl. Ex. 8(g).) Adding to the uncertainty regarding the

---

[3] Bakalar contends that 57 of the 124 works identified by the Heirs as Grunbaum pieces were sold to Kornfeld by Lukacs. (Charron Decl. ¶ 24.) Of these 57 works, 54 were included in the Gutekunst & Klipstein Catalog No. 57 ("Catalog 57"). (Charron Decl. ¶ 24.) Kornfeld, however, recently noted that not all works included in Catalog 57 were purchased from Lukacs.

11

origins of the works, the Heirs concede that Lukacs could not have retrieved artwork from the Nazis. (Charron Decl. ¶ 22; Answer ¶¶ 271-74.) For these works, the Court's journey would be even longer because of the need to determine whether they were owned by Fritz Grunbaum and if so, when.

Since certification of the Heirs' proposed class would require individual inquiries concerning the hundreds of unidentified Schieles and other untitled works in the Kieslinger Inventory, it is not feasible for this Court to determine class membership. Accordingly, this Court concludes that the proposed class and subclasses are not "precise, objective and presently ascertainable."

B. Numerosity

Certain Counterclaim-Defendants argue that the Heirs cannot establish numerosity based on their failure to estimate the size of the class and each subclass. Although the Heirs are not required to articulate the exact class size, they must provide a reasonable estimate of the number. Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). The Heirs argue that they have "alleged 450 artworks and indicated 124 discrete potential class members." (Heirs' Mem. at 8.) Those potential class members are keyed to the 124 works the Heirs claim to have traced to Grunbaum. Only five of these works, however, are identified by title in the Kieslinger Inventory. While the threshold number to certify a defendant class is fewer than required for a plaintiff class, a class based on five works is not "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); see State of N.Y. v. Anheuser-Busch, Inc., 117 F.R.D. 349, 351 (E.D.N.Y. 1987) ("We are particularly hesitant to certify a defendant class,

---

(Charron Decl. Ex. 8(f).) Nevertheless, according to Kornfeld's records, he purchased at least 45 Schiele pieces from Lukacs. (Charron Decl. Ex. 8(g).)

where joinder appears practicable, due to the additional manageability and due process concerns raised by certification of such classes."); see generally, Wade v. Indus. Funding Corp., No. 92-0343 (TEH), 1993 WL 594019, at *9 (S.D.N.Y. Dec. 14, 1993) ("[D]efendant classes have been certified with as few as 13 members."). In any event, even if the Heirs could establish numerosity, they cannot demonstrate certain other components necessary for certification under Rule 23(a).

    C.    <u>Commonality, Typicality and Adequacy</u>

As this Court has noted, the commonality, typicality and adequacy requirements of Rule 23(a) with respect to defendant class certification embrace similar considerations to guarantee procedural fairness. Monaco, 187 F.R.D. at 66; DeAllaume, 110 F.R.D. at 305. These requirements "ensure that maintenance of a class action is economical and that the named representative's defense and the class defenses are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Monaco, 187 F.R.D. at 67 (citation and alteration omitted); see also Consol. Rail Corp., 47 F.3d at 484. Indeed, in defendant class actions where the representative is frequently an unwilling champion of the class, the presence of common questions informs whether a representative defending his own interests will ipso facto protect the interests of the class. See Consol. Rail Corp., 47 F.3d at 483-84; U.S. v. Local 1804-1, Int'l Longshoremen's Ass'n, No. 90 Civ. 963 (LBS), 1993 WL 439109, at *1-2 (S.D.N.Y. Oct. 27, 1993) ("The task imposed on the Court when a motion for defendant class certification is made is to examine the status of the proposed class representative as compared to the nature of the class and the issues to be resolved.")

13

The Heirs argue that whether a theft of the artwork listed on the Kieslinger Inventory occurred is the salient common question of law and fact that unites the class. Under Rule 23(a) "a single common question may be sufficient." Marisol A. v. Giuliani, 929 F. Supp. 662, 690 (S.D.N.Y. 1996); accord Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 86 (S.D.N.Y. 2001). Further, once a common question is presented, individual factual variations will not defeat commonality. Marisol A., 929 F. Supp. at 690. In defendant class actions, "due process considerations of fairness for absent class members require special care to be exercised by the court in identifying issues that are common to the class." Newberg § 4:58. Assuming arguendo that the Heirs have articulated a common question under Rule 23(a)(2), the absence of typical defenses and lack of adequate representation render certification inappropriate.

Counterclaim-Defendants argue that because they maintain unique defenses they cannot fairly and adequately protect the interests of the class. "[T]he Due Process Clause . . . requires that the named [representative] at all times adequately represent the interests of the absent class members." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985); accord Wolfert v. Transamerica Home First, Inc., 439 F.3d 165, 171 (2d Cir. 2006). The Second Circuit has observed that "[t]o be fair and adequate, representation must meet two basic standards under Rule 23: First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another." In re Joint E. & S. Dist. Asbestos Litig., 78 F.3d 764, 778 (2d Cir. 1996). Typicality assures that by defending the claims asserted against them, the representatives necessarily defend such claims against the putative class members. Rios, 100 F.R.D. at 412. While minor factual distinctions will not impugn a finding of typicality, substantial variations concerning relevant defenses undermine the representative's ability to fairly represent the interests of the absent

defendant class members. See Monaco, 187 F.R.D. at 68 (typicality not satisfied due to substantial factual variations "relevant to the defendant class member's possible defenses to plaintiff's claims, as well as to any possible remedy"); see also In re Arthur Treacher's Franchise Litig., 93 F.R.D. 590, 597 (E.D. Pa. 1982); U.S. v. Trucking Employers, Inc., 75 F.R.D. 682, 688-89 (D.D.C. 1977).

The Heirs seek a declaration that they are the owners of the artwork listed on the Kieslinger Inventory and either immediate possession or an accounting and damages with respect to those works. (Answer ¶ 397.) The Heirs' counterclaims involve more than 450 individual pieces of art, of which approximately 420 works were deposited with Schenker & Co. Each work has its own unique provenance or history and for the past sixty-eight years were transferred at different times, under different circumstances and in various jurisdictions. (See, e.g., Gruber Decl. Ex. E: Detail on 124 Schiele Artworks.) Accordingly, the Counterclaim-Defendants raise unique, atypical defenses and cannot serve as adequate representatives of the proposed subclasses.

First, an individual investigation is required to identify each untitled work. Second, good faith defenses would vary for each class member based on applicable law and the facts specific to each transfer. See Greek Orthodox Patriarchate of Jerusalem v. Christie's, Inc., No. 98 Civ. 7664 (KMW), 1999 WL 673347, at *4 (S.D.N.Y. Aug. 30, 1999) ("Under New York's choice of law rules, questions relating to the validity of a transfer of personal property are governed by the law of the state where the property is located at the time of the alleged transfer."). For example, based on the history of the Drawing, Bakalar may assert a good faith purchaser defense unique to the circumstances of his case and may not raise dispositive defenses available to absent class members. See generally, Rios, 100 F.R.D. at 412-13 (denying

15

certification where representative could raise a defense not typical of unnamed defendants); Monaco, 187 F.R.D. at 68 (denying certification because the circumstances applicable to each defendant class member vary widely and as such, "the defenses of each class member can accordingly be expected to vary widely"). Similarly, each museum in the museum subclass maintains its own philosophy and method for provenance research. (Declaration of Stephen W. Clark, dated Mar. 9, 2006 ¶¶ 13, 15, 17, 19, 21.) Thus, the interests of the museum class members will not necessarily be aligned with MoMA's defense.

Third, the Counterclaim-Defendants raise a laches defense requiring an individual demonstration of unfair prejudice as a result of the Heirs' unreasonable delay. See Robins Island Pres. Fund v. Southold Dev. Corp., 959 F.2d 409, 423 (2d Cir. 1992); Sanchez v. Trustees of the Univ. of Pa., No. 04 Civ. 1253 (JSR), 2005 WL 94847, at *2 (S.D.N.Y. Jan. 18, 2004). Such a defense is not susceptible to uniform application as the prejudice suffered may vary by class member.

Finally, each defendant class member "has a different stake in the outcome of this type of litigation, each has different resources to commit, each has a different reason to commit or not commit those resources, and each has a different defense to assert." Joseph L. v. Office of Judicial Support of Ct. Com. Pl. of De. County, 516 F. Supp. 1345, 1352 (E.D. Pa. 1981). Oberlin is a small liberal arts institution that owns one of the purported Grunbaum Schiele pieces, which it purchased in 1958 for $500. (Affidavit of Stephanie Wiles, dated Mar. 8, 2006 ¶¶ 3, 11, 13.) Limited by a modest budget, Oberlin cannot bear the expense and concomitant burdens of defending this action on behalf of all museums located outside New York. See In re Gap Stores Sec. Litig., 79 F.R.D. 283, 303 (N.D. Cal. 1978) (finding representative inadequate because "[w]ith so little stake in the outcome of the litigation [it] might prefer to admit liability

16

than defend on the merits"); Mudd v. Busse, 68 F.R.D. 522, 529-30 (N.D. Ind. 1975); see generally, Thillens, Inc., 97 F.R.D. at 679. In addition, Neue Galerie cannot represent a subclass of all museums currently in possession of Grunbaum artwork as it is not currently in possession of any such works. (Affidavit of Scott Gutterman, dated Mar. 7, 2006 ¶ 5.) Schenker also asserts the unique defense that because it incorporated after the events at issue in this action and is not owned or controlled by Schenker Austria, the Heirs have named the wrong counterclaim-defendant. (Affidavit of Stephen Gifford, dated Mar. 8, 2006 ¶ 2.)

Based on the individualized nature of the subject matter in this action – artwork – unique defenses abound. In view of the careful consideration required to provide procedural fairness and safeguard the absent defendant class members, this Court concludes that the Heirs cannot meet their burden to establish typicality and adequacy. See Moffat, 2006 WL 897918, at *7 (declining to certify defendant class "based on due process and other related concerns"); Thillens, Inc., 97 F.R.D. at 678 (Where unique defenses "will consume the merits of the case . . . a court should refuse to certify a class due to atypicality."); Alexander Grant & Co. v. McAlister, 116 F.R.D. 583, 588 (S.D. Ohio 1987).

Because this Court finds that the Heirs have not demonstrated the prerequisites of Rule 23(a), it need not consider whether the proposed class and subclasses are maintainable under 23(b). In addition, the Heirs' application to conduct additional class discovery is denied. The Heirs have made "no colorable showing" of how additional class discovery beyond the five months already authorized and the eight years of Gruber's research concerning the Grunbaum art collection would enable them to satisfy the requirements of Rule 23(a). Heerwagen, 435 F.3d at 233 ("The amount of [class] discovery is generally left to the trial court's considerable discretion.").

## CONCLUSION

For the foregoing reasons, the Defendants and Counterclaim-Plaintiffs Milos Vavra and Leon Fischer's motion for certification of a defendant class pursuant to Rule 23 is denied.

Dated: July 28, 2006
      New York, New York

SO ORDERED:

*[signature]*
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*:

James A. Janowitz, Esq.
William L. Charron, Esq.
Suyin So, Esq.
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue
New York, NY 10022
*Counsel for Plaintiff and
Counterclaim-Defendant
David Bakalar*

Raymond J. Dowd, Esq.
Dowd & Marotta LLC
277 Broadway, Suite 1310
New York, NY 10007
*Counsel for Defendants and
Counterclaim-Plaintiffs
Milos Vavra and Leon Fischer*

Evan A. Davis, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
*Counsel for Counterclaim-Defendant
The Museum of Modern Art*

Howard N. Spiegler, Esq.
Mari-Claudia Jimenez, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016-9301
*Counsel for Counterclaim-Defendant
Neue Galerie*

James R. Lynch, Esq.
Lynch Daskal Emery LLP
264 West 40th Street
New York, NY 10018

 -and-

Michael J. Frantz, Esq.
Gregory R. Farkas, Esq.
Brian E. Roof, Esq.
Frantz Ward LLP
2500 Key Center
127 Public Square
Cleveland, OH 44114-1230
*Counsel for Counterclaim-Defendant
Oberlin College*

John R. Cahill, Esq.
Joshua D. Jacobson, Esq.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, NY 10019-6708
*Counsel for Counterclaim-Defendant
Sotheby's, Inc.*

Kevin J. Burke, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, NY 10005
*Counsel for Counterclaim-Defendant
Schenker, Inc.*